## Fitzpatrick et ux. v. The Influential B. & L. Assn. et al.

*Herbert J. Welty,* for plaintiffs.
*Harry M. McCaughey,* for defendants.

LEWIS, J., March 29, 1939.—The pertinent facts in this case are not in serious dispute; complainants, who are obligors on a bond and building and loan first mortgage in the principal sum of $1,800 secured on premises 4163 Greely Street, Philadelphia, seek to compel the respondent building and loan association to assign the bond and mortgage and judgment entered in sci. fa. proceedings thereon to a third person.

In July 1938, the mortgage being in default as to interest, share dues, and production of tax receipts, complainants, through an agent, initiated negotiations with the secretary and solicitor of respondent building and loan association, offering for an assignment of the mortgage to a third person payment in cash of the balance due thereon after deduction of the credit allowable to complainants for certain shares of stock in the association. After initially suggesting in a letter dated July 29, 1938—which was after foreclosure proceedings had been started but before judgment had been entered—that the association stood ready to assign the mortgage with certain stipulations, the association's representative later took the position, and informed complainants thereof, that the association would not under any circumstances assign the mortgage, but would satisfy it of record. Later on the same day judgment was entered, and that afternoon the association's solicitor, Scheetz, wrote to complainants' representative that satisfaction would be en-

tered upon receipt of $1,644.26, the amount of the judgment respondent association had obtained in foreclosure proceedings on the mortgage, after costs were added and a credit deducted for the value of complainant's stock in the association.

Complainants declined to accept satisfaction of the judgment and mortgage, but twice thereafter offered to pay in cash the amount owing to the association in consideration of an assignment. Respondent association refused to accept either offer, but pursued foreclosure proceedings, and complainants thereupon brought this action, praying a preliminary injunction to restrain sale of the premises by the sheriff and for an order directing assignment of the bond and mortgage to and a marking of the judgment to the use of a designee of complainants upon payment of the amount due to respondent.

Complainants aver that the refusal of respondent to assign the bond and mortgage and, subsequently, the judgment to which the latter had been reduced, was in contravention of the mandatory provision of section 1 of the Act of May 4, 1927, P. L. 710. Respondent contends that under section 2 of this act the proposed assignee and a second mortgagee should have been joined as parties here, and for this reason and also because its mortgage was reduced to judgment before the filing of the bill assert that this court is without jurisdiction to enforce the transfer.

There is a further controversy as to costs, complainants urging they are entitled to counsel fees and respondent denying our jurisdiction to make an allowance therefor. . . .

*Discussion*

Respondent contends that section 2 of the 1927 act forbids a decree of the character prayed for in the bill because of the proviso in that section that "No such decree shall be entered unless it shall appear to the court that all parties holding any interest in the lands so encumbered have joined in the application for the assignment . . .".

It will be noted that the act uses the term "application", not "bill in equity" or "statement", either of which terms would without doubt be construed as referring unequivocally to the pleadings before the court in an action brought for the decree. We are referred to no case deciding that all parties holding any interest must be joined as parties to such an action, nor do we consider this a reasonable construction of the language of the act. There seems to be no reason why, if they have joined in the application to the mortgagee for the assignment, as it appears in this case they did, they should be required to be parties to subsequent litigation. Their interests are in the land, not in litigation over the interests of others in a prior lien secured on the land, and their assent to fulfilment of the desire of the owner of the land to obtain an assignment of the mortgage is all that is necessary in order for it to "appear to the court" that they "have joined in the application for the assignment . . .". We do not see that the act requires the assent of the proposed assignee who holds no "interest in the lands".

It is not averred that the second mortgagee had objections to the assignment; subsequently to the initiation of these proceedings, it affirmatively indicated its assent in writing, and there is nothing to suggest it would not have done so earlier, if the absence of its assent had been given by respondent as the reason for its refusal to assign. Respondent, however, took the position throughout that while it was ready and willing to satisfy the mortgage, it would not under any conditions assign it. It does not urge that it would have been willing to make the assignment except for failure of complainants to show that the second mortgagee joined in the application, and it would have been futile for complainants to have earlier made an affirmative showing in this regard. Furthermore, the act requires the others interested to have joined only as a prerequisite to a decree in the event the holder of the mortgage shall refuse, on tender of the money due, with interest, to execute an assignment.

The question of the assent of the second mortgagee did not become involved, therefore, until after respondent had refused, contrary to the mandatory provisions of the act, to execute the assignment, and as it now appears to the court the second mortgagee did join in the application, even though it did not formally do so until after the tender was made, the duty of the court under section 2 of the act is clear. Respondent cannot be heard to say the joining by the mortgagee was too late, when but for its own wrong in refusing to assign such joining would not have been essential under the act.

Respondent suggests its solicitousness for the interests of complainants impelled it to refuse the assignment, pointing out that it occupied a position of trust. Its trust relationship cannot have required greater solicitousness for the interests of complainants than of other stockholders, whose interests were entitled to equal protection, and the act very definitely provides that "it shall be the duty of the court . . . to order that the interest . . . shall cease from the day of such tender until the assignment shall be executed and delivered." Judicious regard for the interests of its other stockholders should have dictated to respondent prompt action pursuant to the act upon tender of the amount due it under the mortgage, with interest and other proper charges, for only by such action could it avoid loss of subsequent interest.

The Building and Loan Code of May 5, 1933, P. L. 457, places certain limitations upon assignments of mortgages by building and loan associations, but none of these restrictions is applicable to this case. Respondent suggests section 905 makes assignments optional and nullifies application of the mandatory provisions of section 1 of the 1927 act to building and loan associations. This suggestion finds no support in the cases or in sound principles of statutory construction, and we cannot accept it.

Respondent's argument that the mortgage has now been merged in the judgment entered in the foreclosure

proceedings can avail respondent nothing, for the reason that tender of the consideration for the assignment occurred before the entry of such judgment, and upon such tender it became respondent's duty to assign the mortgage. Having instead pursued the foreclosure proceedings, it is not now in a position to argue that by its own wrongful act it rendered itself immune to a decree of this court, for perhaps no principle of equity is more firmly established than that a party cannot take refuge in his own wrongdoing. True, the form of the decree may have to be different from that of a decree for naked assignment of a mortgage not reduced to judgment. A judgment entered on a mortgage may be assigned as easily as the mortgage itself.

We have examined the objection of respondent to the allowance of counsel fees, and believe there is no merit in it sufficient to warrant discussion. . . .

[Exceptions to the foregoing adjudication and a decree nisi were dismissed without opinion on May 23rd, and the following final decree was then entered.]

### Final decree

And now, June 19, 1939, it is ordered, adjudged, and decreed as follows:

Complainants shall pay to respondent association the sum of money representing the net balance due to the respondent association upon complainants' mortgage obligation, after crediting the value of complainants' shares with interest accrued and unpaid to August 24, 1938, and costs accrued in the proceedings begun by sci. fa. sur mortgage up to said August 24, 1938, together with discontinuance costs and a fee of $90 to the attorney for respondent association.

Upon payment of the aforesaid sum to respondent association, said association shall cause to be assigned to Frieda Richter, nominee of complainants, the bond and warrant and all right, title, and interest of the association in the mortgage securing same, the title insurance and fire insurance policies, and other papers accompany-

ing the mortgage, and shall mark the judgment entered in the sci. fa. proceedings to the use of the said Frieda Richter.

The costs of this action shall be paid by respondent association.